UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEBASTIAN CENTEIO VEIGA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>Defendant. | CIVIL ACTION<br>NO. 13-10013-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J. March 25, 2014

## I. INTRODUCTION

Sebastian Centeio Veiga ("Veiga") brings this action pursuant to section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), and section 1631(c)(3) of the Social Security Act, codified at 42 U.S.C. § 1383(c)(3). Veiga seeks judicial review of the final decision of the Social Security Commissioner (the "Commissioner") denying his claims for social security disability insurance benefits. Prelim. Statement ("Compl.") 1, ECF No. 1. Veiga challenges the denial of his

[1] Carolyn W. Colvin, the now-Acting Commissioner of the Social Security Administration, has replaced former Commissioner Michael J. Astrue in this case caption. See Fed. R. Civ. P. 25(d).

claim for benefits on grounds that the presiding Administrative Law Judge (the "hearing officer") based her decision on mistaken facts and failed in her duty fully to develop the administrative record. Mem. Supp. Mot. Reverse Decision & Remand Soc. Sec. Admin. ("Pl.'s Mem.") 5, ECF No. 16. Veiga requests that this Court reverse the decision of the Commissioner and remand the case for a new hearing. Compl. 3. The Commissioner has filed a motion requesting an order affirming her decision. Mot. Order Affirming Decision Comm'r, ECF No. 22.

**A. Procedural Posture**

On December 31, 2009, Veiga filed an application for disability insurance benefits, alleging disability since May 9, 2009. Admin. R. 109, ECF No. 9.[2] Veiga's application was denied on June 10, 2010, id. at 68-70, and denied again upon reconsideration on October 14, 2010, id. at 75-77. Approximately one month later, on November 29, 2010, Veiga filed a written request for hearing, id. at 78-79, and such hearing was held on November 1, 2011, id. at 12. On April 22, 2011, the presiding

[2] The certified record of administrative proceedings related to this case was provided to this Court in nine parts, docketed as a group of eight exhibits and one subsequent submission. See SSA Admin. R. Soc. Sec. Proceedings, ECF Nos. 9-1 through 9-8 (pages 1 through 618); Supplemental SSA Admin. R. Soc. Sec. Proceedings, ECF No. 24 (pages 619 through 815). This record, however, is continuously paginated across the nine parts. For ease of citation, the Court will treat these nine exhibits as one continuously paginated document comprising the full administrative record ("Admin. R.") and cite to the page numbers assigned by the agency therein.

hearing officer issued an unfavorable decision finding that Veiga was not disabled within the meaning of the Social Security Act for the alleged disability period. See id. at 12-21. On November 7, 2012, the Social Security Administration's Appeals Council denied Veiga's request for review, rendering the hearing officer's decision final. Id. at 1. On January 3, 2013, Veiga filed the present action before this Court to review the decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl. 1–3.

**B. Background**

Veiga was born on January 27, 1962, and has an eighth grade education. Admin. R. 44. He is divorced and has two children who live with their mother, and whom he sometimes visits by appointment. Id. at 46. Since his divorce, he has lived with his sister and her daughter. Id. at 45. Veiga receives financial support from his sister and is also a recipient of food stamps. Id. at 51.

For twelve years, Veiga worked at Boston Logan International Airport, id. at 52, where his duties included preparing food and food equipment to be loaded onto airplanes, id. at 137. He left employment at that airport to move to New Bedford, Massachusetts, and began working for Home Depot. Id. at 52-53. On May 29, 2009, during his employment at Home Depot, Veiga fell from an eight-foot ladder while trying to reach a

heavy box on a high shelf for a customer. Id. at 53. He lost consciousness and was immediately taken by ambulance to St. Luke's Hospital in New Bedford, where he was examined and released. See id. at 229-233. Since then, he has not worked at or applied for any job. Id. at 44-45.

**1. Physical Impairments**

Veiga's physical impairments dating to the accident at Home Depot are the primary basis for his claim for social security disability insurance benefits. In the week following his accident, Veiga sought follow-up care at SouthCoast Chiropractic, LLC, in New Bedford. Id. at 236. He reported experiencing back and shoulder pain, headaches accompanied by nausea, and dizziness. Id. at 236-37. In June 2009, Veiga came under the care of Dr. Robert DiTullio ("Dr. DiTullio"). Id. at 491. Dr. DiTullio, concluding that Veiga was "totally disabled," id. at 493, ordered physical therapy and chiropractic management for Veiga's shoulder and back injury, id. at 499. Records from Buttonwood Physical Therapy & Sports Rehabilitation, Inc. dated September 25, 2009, attest to minimal improvement after four weeks of treatment for pain in Veiga's right shoulder. Id. at 354.

Dr. DiTullio also ordered additional imaging studies of Veiga's back and shoulder. Although earlier X-rays had revealed no abnormalities, id. at 491, imaging studies in November 2009

revealed "[i]nfraspinatus tendinophaty with additional AC joint arthropathy and possible impingement," and intra-articular biceps tendinopathy, id. at 502-03. Further imaging studies of Veiga's spine conducted in December 2009 showed, among other things, moderate intervertebral disc space narrowing at several levels of the cervical and lumbar spine. Id. at 241.

Although Veiga expressed feeling "a little better" after continuing physical therapy through February 2010, id. at 373, patient reports through that time largely observe minimal improvement, see, e.g., id. at 358-59, 360-61, 368, 370-71. In March 2010, Dr. DiTullio referred Veiga to Dr. Charles DiCecca ("Dr. DiCecca") for further treatment. Id. at 501. Dr. DiCecca diagnosed Veiga with impingement syndrome of the right shoulder, biceps tendinopathy, and infraspinatus tendinopathy. Id. at 499. He suggested Veiga undergo cortisone injections and ultimately, subacromial decompression and biceps tenodesis. Id. Veiga, however, decided not to pursue immediate treatment and requested time to think things over. Id. at 500. It does not appear that Veiga ever returned for follow-up treatment from Dr. DiCecca.

On June 1, 2010, Dr. Theresa Kriston, a state agency medical consultant, assessed Veiga's physical residual functional capacity. Id. at 481, 488. She found that Veiga could only occasionally climb, balance, stoop, kneel, crouch, or crawl, and that he had limited overhead reach on his right side.

Id. at 483-84. She also concluded that he remained capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing or walking for six hours in an eight-hour day, and sitting for six hours in an eight-hour day. Id. at 482.

**2. Mental Impairments**

In addition to his physical impairments, Veiga claims mental impairment, describing symptoms of poor concentration, social withdrawal, and sleep disturbance. Pl.'s Mem. 2-3. Four months after his accident, Veiga reported to his primary care physician, Dr. Jan Dohlman ("Dr. Dohlman"), that he felt "very well" and had been dieting and exercising. Admin. R. 409. In December 2009, however, Veiga reported that he had been experiencing depressive symptoms during the previous few months. Id. at 412. Dr. Dohlman diagnosed him with depression with anxiety, id. at 414, and referred Veiga to Dr. Rasim Arikan ("Dr. Arikan") for psychiatric treatment, id. at 344. In February 2010, Dr. Arikan diagnosed Veiga with a single moderate episode of major depressive disorder. Id. at 342. Dr. Arikan's notes reflect that Veiga suffered from anxiety but showed no sign of difficulty with attention, cognitive functions, or short and long term memory. Id. During his initial intake session with Dr. Arikan, Veiga mentioned a prior history of alcohol abuse, but also that he had stopped drinking in 2006. Id. at 344.

The record shows that as of April 2011, Veiga had begun treatment with a new psychiatrist, Dr. Mohammad Munir ("Dr. Munir"). Id. at 705. Dr. Munir's April report amended Veiga's depression diagnosis to recurrent mild episodes of major depressive disorder and diagnosed Veiga with active alcohol abuse. Id. at 703. By August of that year, however, Veiga reported feeling better and that his anxiety and depression symptoms had lessened in frequency and intensity. Id. at 750. Dr. Munir's examinations of Veiga regularly observed no serious mental status abnormalities. Id. at 705, 750, 752.

During the course of his treatment with Dr. Arikan and Dr. Munir, Veiga also attended counseling sessions with social worker James Tooley ("Tooley"). Id. at 506. In August 2010, Tooley completed a psychiatric disorder questionnaire in which he stated that Veiga could take care of himself and perform the activities of daily living. Id. He also stated that Veiga had great difficulty with concentration and attention, particularly noting Veiga's difficulty staying attentive to events or information for more than fifteen to twenty minutes. Id. Tooley also noted that Veiga appeared to be socially withdrawn and had difficulties dealing with "work-like tasks." Id.

On May 25, 2010, Dr. Susan Chipman, a state agency consultant, assessed Veiga's mental residual functional capacity and concluded that he retained the ability to understand and

remember “simple task instructions” and to “sustain adequate concentration, pace, and persistence for simple, straightforward task performance.” Id. at 479. She further found that he did not have major problems in getting along with people and that he could adapt to changes in simple, low-stress work situations. Id.

**3. Testimony**

On November 1, 2011, Veiga attended a hearing regarding the denial of his application for disability insurance benefits. Id. at 37. At the hearing, he stated that every day, he wakes up at 10:00 AM and helps his sister with housework, such as folding laundry. Id. at 47. Except for medical appointments, he usually does not go out, and when he does, his sister drives him. Id. at 47-49, 56. He does not read or watch television, and he sleeps during much of the day because of fatigue caused by his medications for pain and depression. Id. at 48, 52.

Veiga also explained that since his accident, his right shoulder has been particularly impaired, preventing him from lifting even a one-gallon milk jug. Id. at 53. He described his back pain as limiting his ability to walk, sit, or stand for extended periods of time. Id. at 54-56. He also alleged symptoms of depression including difficulty with concentration, social isolation, lack of energy, and sleep disturbance. Id. at 55-56. He indicated that his mental impairment causes him to lack

motivation and interest in activities he previously enjoyed. Id. at 56-57. He attested to undergoing counseling to deal with depression and is currently on medication. Id. at 55.

## II. LEGAL STANDARD

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner of Social Security. While questions of law are reviewed de novo, the Court makes its decision based on the pleadings and transcript of the record before the hearing officer. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000) (citations omitted). Generally, the Commissioner's "findings of fact are conclusive if supported by substantial evidence." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Further, the First Circuit has held that the Commissioner's findings must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citations omitted). It is the role of the hearing officer, not the reviewing court, to make credibility determinations and to draw inferences from the record. See id. Resolutions of conflicts in evidence and credibility are committed to the Commissioner's purview. See Evangelista v. Sec'y of Health &

Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). This Court must affirm a decision supported by substantial evidence "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

**B. Social Security Disability Standard**

A claimant is disabled for purposes of eligibility for social security disability insurance benefits if he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has promulgated a five-step sequential evaluation process to determine whether a claimant meets this standard. See 20 C.F.R. § 404.1520 (relating to the evaluation of disability in general); see also 20 C.F.R. § 416.920 (setting out the same test for evaluation of disability in adults). The hearing officer must determine: (1) whether the claimant is engaged in "substantial gainful [work] activity," (2) whether the claimant has a severe physical or mental impairment, (3) whether the impairment qualifies as a listed impairment under 20 C.F.R. part 404, subpart P, appendix 1, lasting beyond the required

duration, (4) whether the claimant has the residual functional capacity to perform his past relevant work, and (5) whether the impairment prevents the claimant from doing other work, considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four stages of this evaluation, while the Commissioner bears the burden at the last stage. See Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).

**III. THE HEARING OFFICER'S DECISION**

The decision rendered by the presiding hearing officer in Veiga's case reflects a considered application of the prescribed five-step evaluation process. See Admin. R. 12-28. First, the hearing officer found that Veiga has not engaged in substantial gainful activity since May, 29, 2009. Id. at 14. Second, she found that Veiga "has the following severe impairments: right shoulder tendinopathy, degenerative disc disease of the cervical and lumbar spine, and major depressive disorder." Id. The hearing officer's comments note additional impairments that were not found to be "severe," including knee impairment, hypertension, hyperlipidemia, chronic obstructive pulmonary disease, and a history of alcohol dependence. Id. at 15. At the third stage of evaluation, however, she did not find that any of Veiga's impairments meet or medically equal the severity of any

impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. Id. at 16.

At step four, the analysis of residual functional capacity, the hearing officer found that Veiga has a residual capacity to perform light work, although he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Id. at 18. Further, the hearing officer found Veiga to be unable to climb ladders, ropes, or scaffolds, and recommended that he "avoid concentrated exposure to hazards such as dangerous machinery or unprotected heights." Id. Based on these findings, the hearing officer determined that Veiga's tasks "would be limited to simple routine tasks involving only occasional decision-making, occasional changes in the work setting, and occasional interaction with the general public." Id. Her ultimate finding at this step was that Veiga is unable to perform his past relevant work as a hardware associate or an airport assembler. Id. at 26.

But at the fifth step of her evaluation, after analyzing the evidence regarding Veiga's residual functional capacity, age, education, and work experience in conjunction with the relevant guidelines, the hearing officer concluded that Veiga is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 27. Relying on the testimony of a vocational expert present at

Veiga’s hearing, id. at 35, the hearing officer concluded that Veiga can, for example, perform the tasks required for work as a mail clerk, photocopy machine operator, or housekeeping cleaner, id. at 27. Accordingly, the hearing officer found that Veiga was not disabled from May 9, 2009, through the date of her decision, November 17, 2011. Id.

## IV. ANALYSIS

Veiga asks this Court to reverse the hearing officer’s determination and remand for a new hearing. Pl.’s Mem. 4. He argues that the hearing officer committed prejudicial error by basing her decision, at least in part, on the “incorrect belief” that Veiga was receiving unemployment benefits, and by ignoring evidence that he was, in fact, receiving workers’ compensation benefits. Id.

Dr. Arikan’s records show that during his initial intake evaluation of Veiga, Veiga made a statement explaining the reason for his referral. See Admin. R. 777. Dr. Arikan appears to have quoted this statement in his notes, including Veiga’s assertion, “I am on unemployment now.” Id. This notation prompted the following observation in the hearing officer’s decision:

> In order to collect unemployment benefits, an individual must attest that he/she is willing and able to work. Thus, the claimant was applying for disability benefits (claiming that he was disabled) at the same time that he was collecting unemployment

> benefits (claiming that he was willing and able to work). While the simultaneous collection of unemployment and disability benefits is not necessarily mutually exclusive, I find that this apparent inconsistency does not enhance the credibility of the claimant's allegations in the present matter.

Id.

### A. The Hearing Officer's Duty to Develop the Record

Veiga argues that the hearing officer improperly relied on the statement in Dr. Arikan's report without attempting to independently verify whether Veiga really was receiving unemployment benefits. Pls.' Mem. 6-7. Veiga also points out that the hearing officer did not take appropriate notice of evidence in the record suggesting that Veiga actually was receiving workers' compensation, implying an inability to work as well as possible confusion on the part of Veiga or Dr. Arikan that could explain Dr. Arikan's allegedly erroneous notation. Id. Veiga contends that by failing to clarify Veiga's actual work and benefits status, the hearing officer failed to carry out her "responsibility . . . to clarify contradictions in the facts." Id. at 6.

No flaw, however, lies in the officer's failure to obtain more evidence regarding Veiga's work and benefits status. Although a hearing officer has an affirmative duty to develop the administrative record, she is under no obligation to seek additional information where there are no obvious gaps in the

record, and where there is a complete medical history. See, e.g., Ribeiro v. Barnhart, No. 05–1011, 2005 WL 2435233, at *7 (1st Cir. Oct. 4, 2005) (concluding that although the hearing officer did not request further information to fill in gaps in a physician's report, she complied with her duty to develop the record if a reasonable conclusion could be drawn from the available evidence); Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 25 F.3d 1037, at *5 (1st Cir. June 9, 1994) (holding that when there is other evidence in the record sufficient to support the hearing officer's decision, there is no duty to seek clarification of inconsistencies in one medical report). Moreover, "remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." Evangelista, 826 F.2d at 139.

Such is not the case here. The hearing officer's alleged mistake about Veiga's collection of unemployment benefits does not create a gap in the record that would require this Court to reverse or remand the case for further proceedings. Dr. Arikan's allegedly mistaken notation was not the only ground on which the hearing officer based her assessment of Veiga's credibility. See Admin. R. 23-26. The record contains numerous reports from the different specialists who treated Veiga that sufficiently

support the hearing officer’s decision, and the hearing officer gave considerable treatment to the reports of Dr. Dohlman, Dr. Munir, Dr. DiTullio, and Tooley. Id. The Court rules, therefore, that the hearing officer in this case did not fail in her duty to develop the record, and that she based her decision on substantial evidence. Further evidence is not necessary to fully develop the facts of Veiga’s case.

**B. Prejudice to Veiga’s Claim**

Even were this Court to assume that the hearing officer erred in not further developing the record, remand is appropriate only if Veiga is able to show that the hearing officer’s failure prejudiced his claim. See Mickevich v. Barnhart, 453 F. Supp. 2d 279, 287 (D. Mass. 2006) (Collings, M.J.) (citing Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H. 1996) (holding that even if a hearing officer did not perform his duty to fill evidentiary gaps in the record, those gaps must also prejudice the claimant to warrant remand)). The Fifth Circuit sensibly has held that to establish prejudice in a case like Veiga’s, a claimant must show that he “could and would have adduced evidence that might have altered the result.” Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996) (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)). Here, Veiga has failed to demonstrate that the hearing officer’s decision would have been different if she had not considered Dr. Arikan’s note.

The hearing officer was clear that Dr. Arikan's mention of unemployment benefits was not "a primary consideration" in her decision, and as previously noted, she gave several other independent reasons for denying Veiga's benefits claim. Admin. R. 23.

Moreover, the decision contains a thorough analysis of the medical reports and Veiga's testimony amply supporting the hearing officer's credibility determination. When making such a determination, the hearing officer ought take the claimant's reports of pain and other limitations into account, but he is "not required to accept the claimant's subjective complaints without question." Perez v. Astrue, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (quoting Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)). Instead, the hearing officer "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Id. (quoting Genier, 606 F.3d at 48). When supported by substantial evidence, this determination is entitled to deference because the hearing officer had the opportunity to observe and examine the claimant and to consider how his testimony fits with other evidence in the record. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (citing DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)).

Consistent with this guidance, the hearing officer found that the abilities described by Veiga in his self-assessments and in several portions of the medical records were not consistent with the allegations he made at his November 2011 hearing. Id. at 22. For example, in February 2010, Veiga completed a self-assessment form and stated that his daily activities included watching television, talking walks, going shopping, and helping his sister with "whatever [he] can do." Id. at 148. He also reported that he went outside on a daily basis and went to church on a regular basis. Id. at 151-52. At the hearing held on November 1, 2011, however, he testified that he did not watch television or read, id. at 47-48, and that he did not leave his house except to attend medical appointments, id. at 56. Overall, the hearing officer found that to the extent Veiga's statements concerning the limiting effects of his symptoms were inconsistent with her assessment of his residual functional capacity, his statements were not credible. Id. at 22-23.

In addition to assessing Veiga's credibility, the hearing officer relied on both subjective and objective medical evidence in the record to conclude that Veiga is not disabled. Id. at 22. She considered his daily activities, the frequency and intensity of his symptoms, the modest regime of medication he took to alleviate his symptoms, and other treatments he used to relieve

pain, such as physical and chiropractic care. Id. After reviewing these factors, she found that Veiga's statements during his hearing were outweighed by other evidence. Id. at 21. Thus, while the hearing officer conceded that Veiga "has impairments that more than minimally affect his ability to engage in work activities," she did not find that his impairments render him disabled. Id.

The extent of this analysis demonstrates that in the course of assessing Veiga's claim for disability benefits, Dr. Arikan's note was only one of many factors that weighed in the balance. The hearing officer's failure to clarify Veiga's work and benefits status did not prejudice him, and absent prejudice, there is no cause for remand.

## V. CONCLUSION

For the aforementioned reasons, this Court DENIES Veiga's motion for an order reversing the decision of the Commissioner or, in the alternative, remanding matter for further proceedings, ECF No. 16, and GRANTS the Commissioner's motion to affirm the Commissioner's decision, ECF No. 22. Judgment shall enter for the Commissioner.[3]

[3] Compare this case with Walsh v. Colvin, No. 1:12-cv-00933 (WGY) (N.D.N.Y. Mar. 25, 2014), issued this same day by this judge, but sitting in the Northern District of New York within the Second Circuit. Both this decision and that are "right" in light of the controlling precedent in the respective courts of appeal. Yet any fair-minded observer would conclude that review

**SO ORDERED.**

/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE

---

is far more lenient to the Social Security Administration in the First Circuit and far more rigorous in the Second. Such disparate intercircuit jurisprudence is something of a reproach to courts charged with interpreting a national statute of such broad administrative and judicial importance.